**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DAIJAH FULLER,

    Plaintiff,

    vs.                                                                    Case No.

PORTFOLIO RECOVERY ASSOCIATES, L.L.C.,
        Defendant.

## COMPLAINT

1.   Daijah Fuller is a Kansas resident.

2.   Portfolio Recovery Associates, L.L.C. ("PRA") is a Virginia corporation that is registered to do business in Kansas. Its resident agent is Corporation Service Company.

3.   The events described in this complaint occurred in Reno County Kansas.

4.   Plaintiff is a Black female who was employed by Defendant for eight years. She was qualified for her position.

5.   Fuller's position at the time of her termination was collections manager. In that position, she must use her own initials **and password** to approve team member work.

6.   Prior to her termination, Fuller had not been disciplined or counseled for performance for more than five years. Her only counseling was about cell phone use more than five years ago.

7.   In October 2022, PRA received what it described as an "anonymous complaint." It conducted a sham investigation and claims to have concluded that Ms. Fuller had violated workplace conduct/integrity rules.

8. Ms. Fuller was terminated on November 12, 2021. She was told that the investigation revealed that her team members knew her password and initials and so could sign off on their own work.

9. Other managers, who were white or male, had not been terminated for similar conduct. Dalton Johnson, a white male, had yelled both his initials and his password across the floor and several employees heard and saw it. Johnson was also supervised by Jay Pratt, Plaintiff's supervisor. This occurred within a few weeks before Plaintiff was terminated. Johnson was not terminated.

10. Her manager, Jay Pratt, a white male, had given others access to his computer without him being present so they could use his computer to perform compliance testing on October 6, just a month before her termination. He was not terminated.

11. Team members knew the initials and passwords of Luke Faidly, a white male, when he was a collections manager. He was not fired.

12. Other managers' initials and passwords have been used by team members and neither the managers nor the team members were terminated.

13. None of her team members were disciplined for using her initials and/or password.

14. Ms. Fuller did not share her password with her team. Instead, Brandon Poe, a white male, had made a joke about her password, which he had created, in front of her team while she was still a collection representative. He was not disciplined or terminated for that.

15. When Ms. Fuller was interviewed in the "investigation," the investigator asked her **only** whether her team knew her initials. Initials are not encrypted, so Fuller said "yes." The investigator, who apparently did not understand what she was investigating, never asked whether her team knew her password. She did not ever tell the investigator that the team knew her

2

password, nor did she ever tell anyone she had given her team her password because she was not asked about it.

16.    Other management employees, again, white and male, have had integrity breaches to which PRA was privy and they remained employed. Two white males in management had affairs and remain employed—one was even promoted to Vice President after discovery of his multiple sexual relationships with representatives.

17.    Fuller complained to her manager Jay Pratt about Defendant's failure to address racial incidents at the Hutchinson office. Those complaints were protected activity.

18.    The last time Fuller complained was within 30 days of her termination. Her cousin, who was Black, had been called a "donkey" by a white employee. Fuller was angry and told Pratt that white employees were engaging in racist behavior and Defendant was not addressing it.

19.    In that same conversation, she reminded him that a white employee had made a complaint against a Black coworker that turned out to be false. The white employee suffered no repercussions. Pratt already knew about the incident, but Fuller cited to it as an example of how white employees were not held accountable for racist behavior.

20.    In the same conversation, Fuller complained to her white manager, Jay Pratt, about a white female management employee who had made racist comments but was not fired. Plaintiff told Pratt it was a pattern, and it was unacceptable. Pratt did not deny that the incidents had happened. When Plaintiff asked him why there were not consequences for white employees, he did not deny that this was true. He just did not respond.

21.    After Plaintiff was interviewed, she spoke to Pratt. She told him that the investigator never asked about her password, that the investigator **only** asked whether Fuller's team knew her initials. She told him that if she had been asked about the password, she would have told the

3

investigator that if her password had been disclosed, the only person who had ever disclosed her password to her knowledge was Brandon Poe. She told Pratt that she should not be in trouble when she had not done anything wrong and when the investigator had never even asked her about her password—only her initials. She understood that if she had issues with the investigation she should go to her manager, Pratt, and she trusted him to convey her concerns with the investigation. She reminded Pratt that she had been given access to his computer and he had not been in trouble for that.

22. Defendant is an employer as that is defined in Title VII.

23. Plaintiff filed a complaint with the EEOC on February 16, 2022. She received her notice of Right to Sue on August 2, 2023, which is less than 90 days before the filing of this complaint. She has exhausted her administrative remedies as to her Title VII claims.

**Count 1—Racial discrimination in violation of Title VII in her termination**

24. White employees were not disciplined for integrity issues or for allowing subordinates to use their initials **and password** but Plaintiff, who did not give anyone her password, was terminated. Plaintiff was not asked about her password in the sham investigation, but she told her manager that if her team knew her password, it had been disclosed, if at all, by a white employee.

25. White employees who reported to the same supervisor as Plaintiff shared their passwords with their teams and were not disciplined for it. Plaintiff shared this with her white manager.

26. Plaintiff's own manager had allowed others to access his computer and had not been disciplined for it.

4

27.     White employees who violated workplace conduct rules, including making racist comments and being dishonest, were not terminated.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and punitive damages and costs and attorney's fees and other such relief as is just and equitable.

### Count 2-Gender discrimination in violation of Title VII in her termination

28.     Male employees whose subordinates knew their initials **and password** were not terminated, but Plaintiff, who did not give anyone her password, was terminated because her team allegedly knew her password, even though it had been disclosed, if at all, by a male employee.

29.     Male employees who violated workplace conduct rules, including integrity issues, allowing others access to computers or passwords, and racist comments and actions were not terminated.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and punitive damages and attorney's fees and other such relief as is just and equitable.

### Count 3—Discrimination because Plaintiff is Black and Female in violation of Title VII in her termination

30.     As described above, other employees who were not both Black and female were not terminated or disciplined for violating workplace conduct rules but Plaintiff was terminated for allegedly disclosing her password to her subordinates, even though she was never asked about that in the "investigation" and even though she had informed Defendant that her password had actually been disclosed to her team, if at all, by a white male employee.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and punitive damages and attorney's fees and other such relief as is just and equitable.

### Count 4—Retaliation in violation of Title VII in her termination

31.     Plaintiff repeatedly complained to her manager about racial discrimination and harassment at Defendant's Hutchinson location, the last time within 30 days of her termination. In that discussion she reviewed for him multiple incidents of racist behavior by white employees and told him that Defendant was not holding white employees accountable. This was protected activity.

32.     She also told him when she was complaining about the inadequate investigation that white male employees, including Poe and Johnson, had disclosed passwords without repercussion and that he, a white male, had allowed employees to use his computer when he was signed in. This was protected activity.

33.     Employees who had not engaged in protected activity and who had violated workplace conduct rules or integrity rules were not terminated.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and punitive damages and attorney's fees and other such relief as is just and equitable.

### Count 5—Racial discrimination in violation of 42 U.S.C. § 1981

34.     White employees were not disciplined for violation of workplace conduct rules or for disclosing their passwords or allowing others access to their computers or even for disclosing her password to others. But Plaintiff, who did not give anyone her password, was terminated because her subordinates allegedly knew her password. If her password was disclosed, it was done by a white employee.

6

35.     Defendant's investigation was a sham because she was never even asked about her password, only about her initials, which were not encrypted.

36.     Plaintiff was treated differently than white employees, and but for her race she would not have been terminated.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and for punitive damages and attorney's fees and other such relief as is just and equitable.

### Count 6—Racial harassment in violation of 42 U.S.C. § 1981

37.     Plaintiff observed that white employees made racist comments and were not disciplined. Those included calling Plaintiff's cousin, a Black employee, a "donkey." A white female employee was routinely reported for racist statements and Defendant did not discipline her. A white employee made a false accusation against a Black employee and was not disciplined.

38.     The failure of Defendant to address and stop racist comments and behavior coupled with the disparities in discipline between white and Black employees created a hostile work environment. The repeated pattern of white employees calling names or making racist statements without consequence altered the terms and conditions of Plaintiff's employment. The incidents were pervasive and they occurred repeatedly.

39.     Defendant was informed of the behavior and allowed it to continue.

Wherefore, Plaintiff prays for judgment against her employer for compensatory damages and for punitive damages and attorney's fees and other such relief as is just and equitable.

### Count 7—Retaliation in violation of 42 U.S.C. § 1981

40.     Plaintiff repeatedly complained to her manager about racial discrimination and harassment at Defendant's Hutchinson location, the last time within 30 days of her termination. In

that discussion she reviewed for him multiple incidents of racist behavior by white employees and told him that Defendant was not holding white employees accountable. This was protected activity.

41.     She also told him when she was complaining about the inadequate investigation that white employees, including Poe and Johnson, had disclosed passwords without repercussion and that he, a white male, had allowed employees to use his computer when he was signed in. This was protected activity.

42.     Plaintiff was terminated in retaliation for complaining about racial discrimination.

Wherefore, Plaintiff prays for judgment against her employer for past wage loss, future wage loss, past and future compensatory damages and punitive damages and attorney's fees and other such relief as is just and equitable.

Respectfully Submitted,

/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240
HITE, FANNING & HONEYMAN L.L.P.
100 N. Broadway, Ste. 950
Wichita, Kansas  67202
Tel:  (316) 265-7741
Fax:  (316) 267-7803
Email:  tibbets@hitefanning.com

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on claims triable to a jury.

/s/ Gaye B. Tibbets
Gaye B. Tibbets, #13240

8